## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 15-cv-01889-REB-CBS

RODOLFO LLACUA, et al.,
and those similarly situated

        Plaintiffs,

    v.

WESTERN RANGE ASSOCIATION, et al

        Defendants.

---

### DEFENDANT MOUNTAIN PLAINS AGRICULTURAL SERVICE'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT

---

Defendant Mountain Plains Agricultural Service (MPAS) moves to dismiss the Plaintiffs' Second Amended Complaint (Doc. 73). Plaintiffs' third try should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because they still fail to allege sufficient facts, even if accepted as true, to state a claim to relief that is plausible on its face.[1] What Plaintiffs shrilly decry as "an industry pervaded by lawlessness" is, according to their own allegations, in strict compliance with governing rules and regulations. They allege insufficient facts to support their antitrust, racketeering, and minimum wage claims. The Second Amended Complaint should be dismissed in its entirety.

---

[1] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**FACTUAL ALLEGATIONS IN THE COMPLAINT**

A.  Plaintiffs' Own Factual Allegations.

Plaintiff de la Cruz alleges that he was a shepherd employed by MPAS in Nevada.[2] (Doc. 73 ¶ 20.) The named Plaintiffs claim they were employed under the H2A program. (Doc. 73 ¶ 21.) That is just about all of the factual allegations by the only Plaintiff alleging any connection to MPAS. The case seems to be about dissatisfaction with wages, but no Plaintiff alleges anything about how much, when, or how they were paid. Plaintiffs allege Defendants failed to reimburse them for certain transportation and subsistence expenses, but these are conclusory allegations unsupported by facts. (Doc. 73 ¶ 148.) They allege no facts pertaining any deductions, legal or otherwise, made from wages. No facts support Plaintiffs' standing to assert civil RICO or breach of contract claims. In short, Defendants remain almost completely in the dark as to the facts that underlie Plaintiffs' claims. The mere allegation that Plaintiffs were employed to herd sheep is insufficient to satisfy even a generous construction of *Iqbal* and *Twombly*'s pleading requirements.

B.  Factual Allegations Concerning Defendants.

Unsupported, conclusory allegations make up the bulk of Plaintiffs' Second Amended Complaint, but a few factual allegations slip in. Plaintiffs allege that Defendants WRA and MPAS, on behalf of their members, prepare job offers for shepherds in the domestic market offering pay at the adverse effect wage rates (AEWR)

---

[2] For purposes of this Motion to Dismiss, Defendant MPAS accepts Plaintiffs' allegation that it employed de la Cruz as true; however, MPAS reserves the right to show the Court that it never directly employed any H2A shepherd, but only assisted its rancher members in their recruitment efforts by preparing applications pursuant to the H2A visa program.

2

established by the U.S. Department of Labor (DOL). (Doc. 73 ¶¶ 22, 23, 49.) When WRA and MPAS prepared the H2A applications, they used the AEWR in almost all applications that they filed with DOL.[3] (Doc. 73 ¶ 72.) When DOL changed the AEWR for Oregon, WRA so informed its members. (Doc. 73 ¶ 99.) As of November 16, 2015, the wage floor for H2A shepherds was increased to $1,206.31 per month. (Doc. 73 ¶ 55.)

WRA and MPAS advertise these rates in job orders submitted to the states for domestic workers, and when they are unsuccessful in filling the available positions, they can recruit foreign workers. (Doc. 73 ¶¶ 45, 48, 51.) WRA and MPAS together facilitated hiring the majority of the H2A shepherds hired in the U.S. (Doc. 73 ¶ 60.) Plaintiffs assert throughout that WRA and MPAS always offered only the bare minimum AEWR, but, curiously, a job order attached to the Second Amended Complaint states that in addition to the AEWR, a bonus may be paid. (Doc. 73 ¶¶ 71, 72, 74, 75, 78 & Doc. 73-2 at 4, ("Employer may offer a bonus").)

In summary, the facts, as pled by Plaintiffs are that the Defendants offered domestic and foreign shepherds work and pay at rates strictly in compliance with the extensive requirements imposed upon them by DOL. (Doc. 73 ¶ 71.) Plaintiffs' conclusory allegations that such conduct constituted an illegal conspiracy are not entitled to a presumption of truthfulness, and should be disregarded by the Court.[4]

---

[3] For purposes of the Motion to Dismiss, Defendant accepts as true the allegation that its members paid no more than the AEWR as pled, while noting that the job order attached to the Complaint contemplates the possibility of a bonus also being paid.  (Doc. 73-2 at 4.)  Defendants reserve the right to dispute this allegation if the case is not dismissed, and will show that some employers offered and paid base wages in excess of the published minimum, and some offered opportunities to earn additional pay and bonuses.

[4] *Iqbal,* 556 U.S. at 681 (2009); *Meek v. Jordan,* 534 Fed.Appx. 762, 764 (10th Cir. 2013).

Case 1:15-cv-01889-REB-CBS   Document 64   Filed 01/08/16   USDC Colorado   Page 4 of 21

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[5] This "plausibility" standard is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A Plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* Legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes. *Iqbal*, 129 S.Ct. at 1949. Even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."[6] The Court will not consider unwarranted inferences, unreasonable conclusions, or arguments. *Iqbal*, 129 S.Ct. at 1951–52. Detailed factual allegations are not required, but the Complaint must plead sufficient facts to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. *Id.* at 1950 (*quotation marks omitted*). Without such "heft," *id.* at 1947, the plaintiff's claims cannot establish a valid entitlement to relief. Facts that are merely consistent with a defendant's liability will not suffice to nudge the plaintiffs' claims "across the line from conceivable to plausible." *Id.* at 1951 (quotations omitted).

---

[5] *Iqbal*, 129 S.Ct. at 1949 (*quoting Twombly*, 550 U.S. at 570).
[6] *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks omitted).

Case 1:15-cv-01889-REB-CBS   Document 94   Filed 01/08/16   USDC Colorado   Page 6 of 21

## ARGUMENT AND AUTHORITY

Plaintiffs' Second Amended Complaint, like the original Complaint (Doc. 1) and First Amended Complaint (Doc. 32), does not come close to alleging sufficient facts to withstand a motion to dismiss. Instead, its allegations describe law-abiding conduct by Defendants. In lieu of facts, Plaintiffs rail against law and economics, and seek to indict a heavily-regulated industry for its very compliance with the law. This is not enough to survive a Motion to Dismiss. Plaintiffs' allegations fail to satisfy even the minimal "plausibility" burden necessary to survive a motion to dismiss post-*Iqbal* and *Twombly*.

All the Plaintiffs allege about themselves is that they were employed by Defendants as shepherds. There are few factual allegations about when any Plaintiff worked, what they were paid, whether that pay equaled or exceeded the AEWR, whether it was subject to deductions of any sort, the nature of reimbursement for travel or subsistence allegedly denied, or indeed of any harm they suffered as a result of alleged conspiracy. The Second Amended Complaint consists mainly of conclusory statements and descriptions of economically-rational, law-abiding conduct upon which no relief can be granted.

Plaintiffs' antitrust and RICO claims fail because they fail to allege predicate acts of conspiracy, relying instead on conclusory allegations and innuendo. The alleged concerted activity between the associations and their members is protected, as are their lobbying efforts. The illegal deduction and minimum wage claims fail because Plaintiffs make no factual allegations at all concerning their pay. Finally, there is no private right

of action under the H2A visa regulations. All of Plaintiffs' claims are due to be dismissed.

A.    <u>Plaintiffs Fail To Allege Facts Sufficient To State An Antitrust Claim (Count I).</u>

Like the Plaintiffs here, the plaintiffs in *Twombly* alleged violations of the Sherman Act, which requires a "contract, combination ..., or conspiracy, in restraint of trade or commerce."[7] The *Twombly* plaintiffs brought a Rule 23 class action on behalf of themselves and other similarly situated subscribers to telephone and internet services who claimed they were harmed by alleged collusion between providers to fix prices. The District Court dismissed it because the plaintiffs alleged parallel behavior but no agreement between the putative conspirators: the complaint did not "alleg[e] facts ... suggesting that refraining from competing in other territories ... was contrary to [the ILECs'] apparent economic interests, and consequently [does] not rais[e] an inference that [the ILECs'] actions were the result of a conspiracy."[8] The Second Circuit reversed, and the Supreme Court granted certiorari to "address the proper standard for pleading an antitrust conspiracy through allegations of parallel conduct."[9]

The Supreme Court held that stating a claim under the Sherman Act's restraint of trade provision required a complaint with enough factual matter, taken as true, to suggest that an agreement was made, and that allegations of parallel conduct and a bare assertion of conspiracy will not alone suffice to state a claim. Plaintiffs' antitrust claim suffers from the same infirmity as in *Twombly*. They do not allege any facts that

---

[7] *Twombly, 550 U.S. at 548, 127 S.Ct. at 1961.*
[8] *Twombly v. AT&T, 313 F. Supp. 2d 174, 188 (S.D.N.Y. 2003).*
[9] *Twombly, 550 U.S. at 553, 127 S.Ct. at 1963.*

MPAS and the other Defendants ever entered into any agreement placing a ceiling on wages, but place their faith entirely in allegations of parallel conduct: offering the AEWR set by DOL for sheepherders. This is not enough to withstand dismissal under *Twombly*.

### 1. Plaintiffs' Allegations Are Conclusory.

Plaintiffs' Second Amended Complaint invites the Court to assume or infer that illegal activity occurred without offering a shred of evidence that it has. Plaintiffs allude to "agreements," but point to none. Nowhere is there any actual or circumstantial evidence of an illegal conspiracy: the illegality and evil intent are off-stage, suggested but never revealed. The few allegations that do state facts demonstrate compliance with DOL rules. Such allegations flunk the "plausibility" test articulated in *Iqbal* and *Twombly*.

### 2. Plaintiffs Fail To Allege Any Illegal Agreement.

Plaintiffs utterly fail to plead any facts whatsoever to support an actual, as opposed to a presumed, agreement among Defendants. Instead, they ask this Court to infer, based on conduct that is strictly in compliance with Federal law, that there was a nefarious plot to depress shepherds' pay and, in essence, to rope DOL into the scheme so that the resulting AEWR would serve Defendants' purposes.[10] The Complaint points to no agreement between any Defendants to fix prices, but instead simply asks the Court to infer that such an agreement must exist – because Defendants *complied with the law*. This does not satisfy the "plausible" pleading requirements defined by the Supreme Court and the Tenth Circuit. "Plausibility" refers to the scope of the allegations

---

[10] Indeed, far from doing Defendants' bidding, DOL fought with them over sheepherder rates. See *Little v. Solis*, 297 F.R.D. 474 (D. Nev. 2014) (EAJA fee dispute following suit by ranchers and rancher associations to challenge DOL notice raising AEWR for shepherds for failure to follow Administrative Procedure Act; rule was rescinded and suit dismissed as moot.)

in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from "conceivable" to "plausible."[11] "Because §1 of the Sherman Act does not prohibit all unreasonable restraints of trade but only restraints effected by a contract, combination, or conspiracy, the crucial question is whether the challenged anticompetitive conduct stems from independent decision or from an agreement, tacit or express."[12] Such an agreement is established by evidence that the alleged conspirators "had a conscious commitment to a common scheme designed to achieve an unlawful objective."[13]

  3. <u>The Facts Alleged Suggest At Most Parallel, Self-Interested Conduct.</u>

  Plaintiffs ask this Court to infer the existence of an illegal agreement because all the Defendants complied with USDOL's wage rates, but this is not enough to get them past a Motion to Dismiss. The Tenth Circuit has held that:

> While consciously parallel behavior may contribute to a finding of antitrust conspiracy, it is insufficient, standing alone, to prove conspiracy. Parallel behavior may, however, support the existence of an illegal agreement when augmented by additional evidence from which an understanding among the parties may be inferred. Such evidence may include a showing that the parties are acting against their own individual business interests, or that there is motivation to enter into an agreement requiring parallel behavior. Mere exchanges of information, even regarding price, are not necessarily illegal, in the absence of additional evidence that an agreement to engage in unlawful conduct resulted from, or was a part of, the information exchange.[14]

Plaintiffs' allegations fall squarely within the bounds of what the Tenth Circuit has held to be insufficient: here, the parties acted in their own individual business interests, and

---

[11] Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation marks corrected) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

[12] *Twombly*, 550 U.S. at 553 (internal citations and brackets omitted).

[13] *Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 764 (1984).*

[14] *Mitchael v. Intracorp, Inc.,* 179 F.3d 847, 858–59 (10th Cir. 1999).

Case 1:15-cv-01889-RBJ-CBS   Document 84   Filed 01/08/16   USDC Colorado   Page 10 of 21

there was no motivation to enter into any illegal agreement since they all were complying with DOL prescriptions.[15] The exchange of compliance information between the associations and their members is unaccompanied by any evidence suggesting that unlawful conduct was the result. Proof of a §1 conspiracy must include evidence tending to exclude the possibility of independent action.[16]

The H2A regulations decree that the AEWR must be published, and offered to all comers, domestic or foreign, experienced or inexperienced. It should come as no surprise that when the government sets very specific rules for a particular market, actors in that market will comply with those rules. They also have no incentive to bid against themselves by offering rates in excess of the amounts determined by DOL. Such conduct, without more, does not violate the antitrust laws, any more than would a shopper who pays no more than the advertised price for a product. There is nothing here that cannot be explained as independent action: specifically, compliance with Federal law and economic self-interest. In *Twombly*, the allegedly anti-competitive conduct actually reflected compliance with new rules governing telecoms: here, Defendants offered wages at rates set by DOL. Neither constitutes illegal conduct. Each is acting in its own interest, not against it; and complying with the law.

---

[15] Indeed, Plaintiffs make the ludicrous suggestion that "absent the price fixing, ranchers would offer at the very least a nominally higher wage to U.S. workers than they do H-2A workers to account for the additional cost of bringing an H-2A worker to the country. . ." (Doc. 73 P 80.) Such a wage differential is expressly <u>forbidden</u> by the H2A regulations. See 29 C.F.R. 655.122(a) ("The employer's job offer must offer to U.S. workers no less than the same benefits, wages, and working conditions that the employer is offering, intends to offer, or will provide to H–2A workers.")

[16] *See Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464 (1984); *Twombly*, 550 U.S. at 554, 127 S.Ct. at 1964.

B.     MPAS And WRA Are At Least Partially Exempt From The Antitrust Laws.

Plaintiffs' conspiracy claims also fail because, as agricultural trade associations for ranchers, MPAS and WRA are exempt from most aspects of the antitrust laws. The Capper–Volstead Act, in relevant part, states:

> Persons engaged in the production of agricultural products as farmers, planters, **ranchmen**, dairymen, nut or fruit growers **may act together in associations**, corporate or otherwise, with or without capital stock, in collectively processing, **preparing for market**, handling, and marketing in interstate and foreign commerce, such products of persons so engaged. Such associations may have marketing agencies in common; and **such associations and their members may make the necessary contracts and agreement to effect such purposes**: *Provided, however,* That such associations are operated for the mutual benefit of the members thereof....

7 U.S.C. § 291 (emphasis added).[17] By recruiting shepherds, MPAS was acting for the mutual benefit of its members within the bounds of the law. There can be no "conspiracy" between a trade association and its constituent members. In *Bell*, the Tenth Circuit affirmed summary judgment in favor of a trade association for mink ranchers, concluding that a cooperative and its board members constituted a single entity unable to conspire with itself, rendering Sherman Act's restraint of trade prohibitions inapplicable to the challenged mink-feed pricing and delivery activities.[18] The same is true here: MPAS, an association of ranchers, cannot be convicted of "conspiring" with its own members.

C.     Offering the AEWR is Independent Action.

As the Supreme Court observed in *Twombly*, an economically rational response

---

[17] *See Bell v. Fur Breeders Agric. Co-op., 348 F.3d 1224, 1231 (10th Cir. 2003); see also Sunkist Growers, Inc. v. Winckler & Smith Citrus Prod. Co., 370 U.S. 19, 27–28, 82 S.Ct. 1130 (1962); Maryland & Virginia Milk Producers, 362 U.S. at 464–66, 80 S.Ct. 847; United States v. Borden Co., 308 U.S. 188, 204–05, 60 S.Ct. 182 (1939).*
[18] *Bell,* 348 F.3d 1224.

to legislation is no crime, even when it leads independent actors in the market to behave in substantially the same fashion. "[C]onscious parallelism," a common reaction of "firms in a concentrated market [that] recogniz[e] their shared economic interests and their interdependence with respect to price and output decisions" is "not in itself unlawful."[19]

When DOL publishes the AEWR for sheepherders, it is making an official pronouncement about the rate a worker performing that job must be paid. It is only economically rational – and emphatically not evidence of conspiracy – for employers seeking to hire such workers to offer a rate that conforms to the government's decree. The employers certainly have no incentive to offer a higher rate, since they must offer the same wage to all applicants and must hire all who meet minimum qualifications. In the final analysis, the decision to offer the AEWR is economically rational and consistent with Defendants' self-interest, and abides by the law.

D.    Lobbying Government Does Not Violate Antitrust Laws.

Plaintiffs' claim that Defendants violated the antitrust laws by somehow imposing their will on DOL to come up with a low wage rate fails because such activity has been recognized as exempt by the Supreme Court, which has rejected any interpretation of

---

[19] *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 227, 113 S.Ct. 2578 (1993); see 6 P. Areeda & H. Hovenkamp, Antitrust Law ¶ 1433a, p. 236 (2d ed. 2003) ("The courts are nearly unanimous in saying that mere interdependent parallelism does not establish the contract, combination, or conspiracy required by Sherman Act § 1"); Turner, The Definition of Agreement Under the Sherman Act: Conscious Parallelism and Refusals to Deal, 75 Harv. L.Rev. 655, 672 (1962) ("[M]ere interdepend-ence of basic price decisions is not conspiracy"), Twombly, 550 U.S. at 553-54, 127 S.Ct. at 1964.*

the Sherman Act that would allow plaintiffs to look behind the actions of state sovereigns to base their claims on "perceived conspiracies to restrain trade."[20]

In *Noerr*, a consortium of railroads directed a publicity campaign toward obtaining governmental action adverse to the interests of trucking companies, but the action was held not to violate the Sherman Act because the Act's purpose was to prevent illegal cooperative activity by private actors and not efforts to influence governmental action.[21] The First Amendment explicitly protects the right to petition the government, and in the context of anti-competition cases, courts have carved out immunity for actions that arise from the lawful petitioning of government agencies.[22] In *Pennington*, the Court held that the defendants could not be liable for paying wages at rates set by the Secretary of Labor, to whom the defendants had petitioned. The Supreme Court held, "Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition. Such conduct is not illegal, either standing alone or as part of a broader scheme itself violative of the Sherman Act." *Pennington,* 381 U.S.at 670. This explodes Plaintiffs' theory that Defendants conspired with DOL to depress shepherd wages. The holdings from *Noerr* and *Pennington* have given rise to a simple rule:

---

[20] *Hoover v. Ronwin, 466 U.S., 558, 580, 104 S.Ct., 1989, 2001 (1984). "[A]ny action that qualifies as state action is "ipso facto ... exempt from the operation of the antitrust laws." City of Columbia v. Omni Outdoor Adver., Inc., 499 U.S. 365, 379, 111 S.Ct. 1344, 1353 (1991) (original emphasis); citing Hoover, 466 U.S. at 568, 104 S.Ct., at 1995); see also E. R. R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523 (1961) (federal antitrust laws do not regulate the conduct of private individuals in seeking even anticompetitive action from the government).*
[21] *See also United Mine Workers of Am. v. Pennington, 381 U.S. 657, 85 S.Ct. 1585 (1965) (joint efforts by coal mine operators to influence public officials did not violate the antitrust laws even though intended to eliminate competition).*
[22] *See Noerr, 365 U.S. 127, 81 S.Ct. 523; Pennington, 381 U.S. at 671(1965).*

"parties are immune from liability arising from the antitrust injuries caused by government action which results from the petitioning."[23]

E.   **Complying With Federal Laws And Regulations Does Not Violate Antitrust Laws**.

Here, the wage rates set by DOL are the product of surveys in the relevant markets. (Doc. 32 ¶ 75.) Plaintiffs' allegation that Defendants have conspired with the government to skew those results are unsupported by any facts, but in the final analysis, the AEWR is the result of government's action, not Defendants'.[24] And unlike private actors in the marketplace, the government, as a sovereign entity, has the right to adopt anticompetitive regulations.[25] In following such government action, a private actor is similarly immune from antitrust liability.[26] DOL's decisions with respect to the AEWR thus cannot be the basis for an antitrust claim against any Defendant.

F.   **Plaintiffs Fail To State A Claim Against MPAS Under Civil RICO (Count V)**.

Plaintiffs allege violation of § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate ... commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Plaintiffs also allege violation of § 1962(d), which makes it illegal "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." The elements

---

[23] *A.D. Bedell Wholesale Co., Inc. v. Philip Morris Inc., 263 F.3d 239 (3d Cir. 2001).*
[24] See also *Little s*, 297 F.R.D. 474 (suit by rancher association and ranchers against DOL over AEWR for shepherds).
[25] *A.D. Bedell, 263 F.3d at 254 (quoting Parker v. Brown, 317 U.S. 341, 352, 63 S.Ct. 307 (1943).*
[26] *See, e.g., Sessions Tank Liners, Inc. v. Joor Mfg., Inc., 17 F.3d 295, 298 (9th Cir. 1994) (observing that Parker immunity applies to "states as well as to private parties").*

of a civil RICO claim are 1) "conduct of, 2) an enterprise, 3) through a pattern 4) of racketeering activity."[27]

Plaintiff's racketeering claim does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678. Rather, Plaintiffs offer only "labels and conclusions" that the defendants violated the RICO statute. *Id.* at 678. "[R]acketeering activity" is defined to include several predicate criminal acts, but Plaintiffs allege none: only, in very general terms, that MPAS and WRA used electronic communications to make fraudulent statements concerning the terms of employment. (Doc. 73 ¶¶ 146, 147.) In addition to these elements, a plaintiff must also show proximate causation between the RICO predicate offense and the injury.[28]

Plaintiffs' allegations lack factual support. First, none of the acts alleged can remotely be described as criminal. Second, Plaintiffs assert that Defendants made false or fraudulent representations about promises of reimbursement or deductions from pay, but allege only in the most general, conclusory terms. (Doc. 73 P 146-48.) This does not meet the required minimum for pleading.

"The threat of treble damages and injury to reputation which attend RICO actions justify requiring plaintiff to frame its pleading in such a way that will give the defendant ... clear notice of the factual basis of the predicate acts."[29] To pass this test, Plaintiffs would have to set forth the time, place, and contents of the false representation, the

---

[27] *Tal v. Hogan,* 453 F.3d 1244, 1261 (10th Cir. 2006) (citation omitted). "Racketeering activity" is defined in 18 U.S.C. § 1961(1)(B) as "any act which is indictable" under any of the crimes listed in the statute. These underlying acts are "predicate acts" and form the basis for RICO liability. *Tal,* 453 F.3d at 1261.
[28] *Hemi Group, LLC v. City of New York,* 559 U.S. 1, 8 (2010).
[29] *Cayman Exploration Corp. v. United Gas Pipeline Co.,* 873 F.2d 1357, 1362 (10th Cir. 1989).

identity of the party making the false statements, and the consequences thereof. *Tal,* 453 F.3d at 1263. Plaintiffs fail to do any such thing. Nor do Plaintiffs allege the existence of a scheme to defraud, or the use of electronic communications for the purpose of executing the scheme. *Tal,* 453 F.3d at 1263. As the Tenth Circuit has explained:

> A scheme to defraud is conduct intended or reasonably calculated to deceive persons of ordinary prudence or comprehension. The objective reference to persons of ordinary prudence or comprehension assists in determining whether the accused's conduct was calculated to deceive. Fraudulent intent is required. That said, a scheme to defraud by false representations may be accomplished by patently false statements or statements made with a reckless indifference as to their truth or falsity, *and deceitful concealment of material facts may constitute actual fraud.*[30]

"A scheme to defraud focuses on the intended end result and affirmative misrepresentations are not essential...." *Id.* at 664. The court also clarified that misleading omissions can form the basis of a mail or wire fraud claim even where there is no fiduciary duty. See *id.* ("Even apart from a fiduciary duty, in the context of certain transactions, a misleading omission is actionable as fraud if it is intended to induce a false belief and resulting action to the advantage of the misleader and the disadvantage of the misled.").

Nor do Plaintiffs satisfy the pleadings requirement as to injury. As the Supreme Court explained:

> [T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a "but for" cause of his injury, but was the proximate cause as well. Proximate cause for RICO purposes ... should be evaluated in light of its common-law foundations; proximate cause thus requires

---

[30] *United States v. Cochran,* 109 F.3d 660, 664–65 (10th Cir. 1997) (internal quotations, alterations and citations omitted, emphasis added).

Case 1:15-cv-01889-REB-CBS Document 84 Filed 01/08/16 USDC Colorado Page 17 of 21

some direct relation between the injury asserted and the injurious conduct alleged. A link that is "too remote," "purely contingent," or "indirec[t]" is insufficient.[31]

Again, Plaintiffs utterly fail to allege facts suggesting that any of them suffered any actual injury: that expense due to be reimbursed were not, that subsistence was due but not paid, that illegal deductions from pay were taken. Plaintiffs' conclusory pleading is insufficient to support their RICO claims and therefore they should be dismissed.

G.  Plaintiffs Fail To Allege Sufficient Facts To Support Their Nevada Minimum Wage Claim (Count VI).

Plaintiff de la Cruz alone alleges that he was employed by MPAS in Nevada, but never says when, or what he was paid. In this utter vacuum of pleading, any claim alleging violation of Nevada's minimum wage law should be dismissed.

H.  Plaintiffs Fail To Allege Sufficient Facts To Support An Action For Breach Of Contract Or Quasi-Contract Under 20 C.F.R. 655.122 (Count VIII).

Plaintiffs' breach of contract claims are due to be dismissed because they fail to plead even the minimal facts necessary to support such a claim, e.g., that there was a contract between a Defendant and any Plaintiff, and that the contract was breached. The elements of breach of contract are: 1) the existence of a contract between the parties; 2) consideration; 3) Plaintiff's performance or willingness to perform in compliance with the contract; 4) Defendants' breach of the contract; and 5) damages as a result of the breach.[32]  Again, de la Cruz is the only Plaintiff who claims to have been employed by Defendant MPAS. This arguably satisfies the first element, but all of the others fail for want of facts. He has never alleged consideration, performance, breach,

---

[31] *Hemi Group, LLC v. City of New York,* 559 U.S. 1, 9 (2010) (internal citations and quotations omitted).
[32] *Britvic Soft Drinks, Ltd. V. ACSIS Techs., Inc.,* 265 F.Supp.2d 1179, 1187 (D.Kan. 2003).

or damages. He has never said when he was employed, on what terms, what he was paid, and asserts only generally that sums due him were not reimbursed or deductions from his pay were unlawfully made. All he has told the Court is that he was employed by MPAS as a shepherd, in Nevada. That is not enough for a breach of contract or quasi-contract claim.

I.     There Is No Private Right Of Action Under 20 C.F.R. 655.122.

Plaintiffs' claim for damages due to an alleged breach of promises made in job postings (see Doc. 73 ¶ 291) fails because there is no private right of action under this law. Courts have refused to find that a private right of action exists under the Wagner-Peyser Act, 29 U.S.C. 49 *et seq.*, which provides for the establishment of the United States Employment Service (USES) to promote the establishment and maintenance of a national system of public employment offices throughout the United States. The Wagner-Peyser Act is a statute providing a means for exchange of information on employment opportunities and conditions, and nowhere expressly provides a private cause of action,

The terms of the Act and its regulations do not proscribe conduct on the part of participants in the programs of the USES. The Act assesses no penalties and affords no private remedies. The regulations deal with placement services to be provided by state agencies and specifically, in 20 C.F.R. 602.8, provide for agricultural and related industry placement services. 20 CFR part 651 sets forth general provisions governing the federal-state employment service system.  No private right of action is contemplated in this law.

Given the absence of a specific provision creating a private remedy and the absence of legislative history tending to support an intention to create such a remedy, a private remedy for money damages may not be implied.[33] Because no private right of action exists, Plaintiffs' Count VIII should be dismissed.

## CONCLUSION

Accordingly, for the reasons set forth above, Defendants respectfully request that their Motion be granted, this case dismissed in its entirety, and any such other and further relief as the Court may deem fit.

Respectfully submitted this 8th day of January, 2016.

> /s/ J. Larry Stine
> J. Larry Stine
> Elizabeth K. Dorminey
> Raymond Perez
> WIMBERLY, LAWSON, STECKEL,
> SCHNEIDER & STINE, P.C.
> Suite 400, Lenox Towers
> 3400 Peachtree Road, N.E.
> Atlanta, Georgia 30326
> Phone: (404)365-0900
> Fax: (404) 261-3707
> Email: jls@wimlaw.com
> bdorminy@bellsouth.net
> rp@wimlaw.com
> *Attorneys for Defendant*
> *Mountain Plains Agricultural Service*

---

[33] *Transamerica Mortgage Advisors v. Lewis, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); Touche Ross & Co. v. Redington, 442 U.S. 560, 99 S.Ct. 2749, 61 L.Ed.2d 82 (1978).*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 15-cv-01889-REB-CBS

RODOLFO LLACUA, et al.,
and those similarly situated

    Plaintiffs,

  v.

WESTERN RANGE ASSOCIATION, et al

    Defendants.

---

## CERTIFICATE OF SERVICE

   I HEREBY CERTIFY that I electronically filed the foregoing **DEFENDENT MOUNTAIN PLAINS AGRICULTURAL SERVICE'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Alexander Neville Hood, alex@towardsjustice.org

Amber J. Munck, MunckA@gtlaw.com

Bradford Joseph Axel, bja@stokeslaw.com

Brendan Victor Monahan, monahan@stokeslaw.com

David Hollis Seligman, david@towardsjustice.org

Dermot William Lynch, dermot@towardsjustice.org

J. Roderick Betts, rbetts@paulplevin.com

Justin David Cumming, jcumming@lrrc.com

Kenneth F. Rossman , IV, krossman@lrrc.com

Lauren Elizabeth Rosner, lrosner@paulplevin.com

Naomi G. Beer, beern@gtlaw.com

Billie Jean Siddoway, bsiddoway@siddowaylaw.com

Case No. 1:15-cv-01889-REB-STV Document 91 filed 03/02/16 USDC Colorado pg 21 of 21

This 8th day of January, 2016.

*/s/ J. Larry Stine*
J. Larry Stine
Elizabeth K. Dorminey
Raymond Perez
WIMBERLY, LAWSON, STECKEL,
SCHNEIDER & STINE, P.C.
Suite 400, Lenox Towers
3400 Peachtree Road, N.E.
Atlanta, Georgia 30326
Phone: (404)365-0900
Fax: (404) 261-3707
Email: jls@wimlaw.com
bdorminey@bellsouth.net
rp@wimlaw.com

*Attorneys for Defendant*
*Mountain Plains Agricultural Service*
